## No. III.

### BOARD OF LAND COMMISSIONERS OF NACOGDOCHES COUNTY V. JAMES REILY, ASSIGNEE.

(See Note 10.)

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—The appellee in this case, as the assignee of various individuals, applied to the board of land commissioners for the county of Nacogdoches for certificates for the claims to land to which he alleged his assignors were respectively entitled as the grantees of orders of survey, obtained according to the laws of the country. The application being rejected, an appeal was taken to the district court, and during the pendency of the case before that tribunal, the following agreement was entered into between James Reily, the appellee in this court, and Charles S. Taylor, the district attorney of the Fifth Judicial District, viz: "It is agreed that in all the land cases now on docket of the District Court of Nacogdoches, wherein James Reily has sued the board of land commissioners, either as assignee or attorney, upon orders of survey with field notes annexed, the following points shall be considered as established: 1. That the order of survey was obtained from a legally authorized commissioner, and the survey made by a legally authorized surveyor, and that the section of the general provisions of the Constitution which recites 'that all orders of survey legally obtained by any citizen of the Republic from any legally authorized commissioner, prior to the act of the late Consultation closing the land offices shall be valid,' has been complied with. 2. That he is the regular purchaser or attorney of the original grantee, and entitled as assignee or attorney to sue the board of land commissioners for a certificate; provided such admission of right in said Reily to sue does not go in avoidance of any duty or obligation that may by operation of law have devolved upon or become obligatory upon the grantee. 3. That these are the questions to be submitted to the court and jury: (1) That inasmuch as the original grantee has not complied with the requirements of the twelfth section of the land law of 1837, can the said Reily recover before the court a verdict against said board? (2) That an order of survey with field notes annexed do not constitute a legal title, and is not therefore the subject of transfer or assignment."—Dated October 3, 1839.

On the 15th of the same month two of the appeals were tried and verdicts found for the said Reily. On the 17th a third was tried with a similar result; and on the same day an additional agreement was entered into, by which it was provided, "that all the foregoing cases men-

---

C. A., 62. If there is no final judgment the appeal should be dismissed. Martin v. Crow, 28 T., 613; Simpson v. Bennett, 42 T., 241; I. & G. N. Ry. Co. v. Smith County, 58 T., 74; Whitaker v. Gee, 61 T., 217; Mignon v. Brinson, 74 T., 18. The record can not be amended after dismissal so as to show

tioned or referred to, being of the same nature and dependent on the same principles, the cause to be tried that day should decide all the others," the parties reserving to themselves the right of appeal, if desirous to take the same. Accordingly the record enumerates more than seventy cases, which it states came on to be heard, and upon which a general judgment was entered in favor of the said Reily. It states substantially "that the plaintiff and district attorney having submitted said causes without further argument to the court, the record and evidence being the same in all respects as in the three several causes tried at this term of the court between the same parties, which were submitted to the court and jury, and full argument had thereon, as will more fully appear by the agreement of the district attorney and the said plaintiff on file, all of which being fully considered by the court, it was adjudged and decreed that the said James Reily, assignee as aforesaid, do recover from the board of said commissioners certificates for the quantity of land respectively annexed to the names of each of the assignors mentioned in the foregoing cases; provided, the decision of this court, in the case of the said James Reily, assignee as aforesaid, be confirmed by the Supreme Court, upon the facts as by agreement between the said James Reily, assignee as aforesaid, and Charles Taylor, district attorney." The board of land commissioners appealed to this court from the verdicts and judgment in the court below.

It is urged by one of the counsel for the appellee that the agreement must govern the court, and we can not go beyond it. The question of the propriety or binding efficacy of this transaction will not be considered by this tribunal. It has not been resisted by the counsel employed for the Republic, and will therefore pass undisturbed. The appeal will be considered on the facts, or points admitted, as established in the court below; and the only question is, whether the facts, as established, authorized the jury in finding a verdict in favor of the appellee. What, then, were the points conceded by the admissions of the district attorney?

1. That the order of survey was obtained from a legally authorized commissioner, and the survey made by a legally authorized surveyor, and that the provision of the Constitution in relation to the validity of orders of survey had been fully complied with.

2. That the appellee is the regular purchaser or attorney of the original grantee, and entitled as assignee, or attorney, to sue the board of land commissioners for a certificate, provided such admission of right in said Reily to sue does not go in avoidance of any duty or obligation

final judgment. M. P. Ry. Co. v. Scott, 78 T., 360. Judgment is not final until motion for new trial is overruled. M. P. Ry. Co. v. Houston Flouring Mill Co., 2 App. C., sec. 573.

**Note 8.**—Andrews v. Andrews, p. 375.

Charge of adultery does not prevent temporary allowance of alimony to plaintiff. Withee v. Withee, 50 T., 328. Our laws do not make provision for permanent alimony. Pape v. Pape, 13 T. C. A., 99. Order for alimony can not be enforced after refusal of divorce. Wright v. Wright, 6 T., 29; O'Haley v. O'Haley, 31 T., 502. It may be increased by appellate court on reversal of decree. Wiley v. Wiley, 33 T., 358. Injunction will lie to prevent husband from disposing of property for the purpose of avoiding payment of alimony. Wiley v. Wiley, 33 T., 358.

that may by operation of law have devolved upon or become obligatory upon the grantee. If any fact can be found in the third point it shows that the original grantee has not complied with the requirements of the land law of 1837.

But it is urged that the record does not reject the presumption that Reily made all the proof required by the twelfth section of the land law of 1837. We can not discover any solid foundation for such a presumption. The admissions were unquestionably liberal, but they can not be extended beyond the plain and obvious meaning of the terms in which they are expressed, to embrace other facts than those intended to be included therein. They must be confined to the points which in clear and unambiguous terms are conceded to be established.

Did, then, the facts admitted authorize the finding of the jury in the court below? We are clearly of opinion that they are insufficient to sustain the verdict. There are several material facts required to be proven by the twelfth section of the land law of 1837, which are not admitted and can by no fair inference be considered as proven. By that section of the law, persons claiming lands are required to swear that they were resident citizens of Texas at the date of the declaration of independence; that they did not leave the country during the campaign of the spring of 1836, to avoid a participation in the struggle, etc. They must also prove that they were actually citizens of Texas at the date of the declaration of independence, and have continued so to the time of making the application, etc. Persons claiming a grant to land by purchase must prove in the manner required by the act, that their vendors are actually entitled to said grants of land from the government, etc. "And all orders of survey of headrights, procured under the colonization laws previous to the declaration of independence, shall be submitted to the examination of the land commissioners, and the holders of the same, whether they be original claimants, their heirs or assignees, shall be subjected to the same formalities and requisitions in procuring said headrights, as pointed out for other individuals in the law." It is apparent from this section that where the grantee does not appear in person, his assignee must prove that the assignor has complied with the requirements of the law.

The record furnishes no evidence that the assignee in this case offered or attempted to make any such proof. Nothing is admitted but the legality of the orders of survey and the regularity of their assignments to applicant; and on these admissions it is clear that he was not entitled to the judgment of the court below.

Nor can it be maintained, as was urged, that it is unnecessary in

**Note 9.**—Bailey v. Haddy, Administratrix, etc., p. 376.

Adoption of the common law by Act of January 20, 1840 (Gammel's Laws of Texas, vol. 2, p. 177), brought with it the writ of error. Moore v. Harris, 1 T., 36. With us it is not the institution of a new suit but only a mode of appeal. Andrews v. Andrews, Dal., 427; Creek v. Rogers, 1 T., 440; Smith v. Gerlach, 2 T., 424; Luckett v. Townsend, 3 T., 119; Lacey v. Ashe, 21 T., 394; Rodgers v. Alexander, 35 T., 116; Hart v. Mills, 38 T., 513; Magee v. Chadoin, 44 T., 488; Harle v. Langdon, 60 T., 555; Moore v. Moore, 67 T.,

the district court to prove the facts which the statute requires to be established to the satisfaction of the board of land commissioners before a certificate can be obtained. The statute prescribes the conditions on which certificates shall issue, and these must be complied with, before any tribunal which has cognizance of the cause is authorized to decide in favor of the applicant.

But it was alleged, though not urged, that the twelfth section of the land law of 1837 was unconstitutional. Had there been a serious attempt to impugn the provisions of that section, as in contravention of any rights which may have been guaranteed to the appellee by the Constitution, it would have been the duty of this tribunal to have deliberated on and decided the question. But under the circumstances we have not thought it incumbent on us to take the matter into consideration. The appellee has not attempted to comply with any of the requirements of that section. Now it is obvious that many of the conditions there imposed are in entire accordance with the Constitution, and it is believed that none of the provisions of the two instruments are in conflict. But the point is left open for future discussion when it can be decided on solemn argument and mature deliberation.

It was also urged that under the twentieth section of the land law of 1837, the appellee was entitled to a certificate and patent. This position is untenable. The twentieth section requires the holder of an order of survey, before obtaining a patent, to produce a certificate from some board of land commissioners. This can not be obtained without making the proof required by law. The provisions of the two sections are in entire harmony and the obligations imposed by the one are neither removed nor diminished by the other.

It was contended that the eighth section of the act passed at the last session of Congress, "To detect fraudulent certificates," conferred a right upon the appellee, which was not taken away by the subsequent Act of the 5th of February, as the latter act did not go into effect until three days after the former.

That the latter act was not in force until three days after the former was in operation in all of its provisions, is a position which is questionable; but the whole question in relation to the conflict between these two acts is waived as unnecessary to the decision of this case. The right of appeal is guaranteed by the Constitution. The Legislature can not take it away from individuals; and it will not be considered as relinquished by the government unless express terms are used to that effect, or that is the legitimate inference to be deduced from the provisions of the subject. It was decided by this tribunal at its last ses-

293; T. T. Ry Co. v. Jackson, 85 T., 605; G. H. & W. Ry Co. v. Lacy, 7 T. C. A., 63; Hart v. State, 13 T. App., 555. As a general rule appellate courts only have appellate jurisdiction and powers incident thereto. Republic v. Laughlin, Dal., 412; Nash v. Republic, Dal., 631; Dewees v. Hudgeons, 1 T., 192; Chambers v. Hodges, 3 T., 517; Burke v. Mathews, 37 T., 73; City of Brownsville v. Basse, 43 T., 440; Bennett v. Waddell, 54 T., 273; Wells v. Marshall, 62 T., 28; Darnell v. Lyon, 85 T., 455. It is within the power of appellate courts to devise means to enforce their jurisdiction and to adopt
(384)

sion, that under the laws of the land the right of appeal was not taken away from the government when the verdict of the jury was in favor of the applicant in the trial, authorized by the sixteenth section of the land law of 1837. The opinion of this court has not been changed in relation to the correctness of that decision.

The appeal in this case was from a verdict a jury gave, under the sixteenth section of the land law of 1837. It had been taken long before the passage of the act "To detect fraudulent land certificates." By it, the verdict of the jury and the judgment of the court were suspended in their operation. It was before this court and fairly within its cognizance and could not be withdrawn by legislation, unless such was the plain and necessary import of the law in relation thereto.

It is unnecessary to express any opinion on the assignability of orders of survey. The suit was commenced under the land law of 1837, and that recognizes the power of the assignee to make the proof required by the statute.

The rendering of one general judgment on a number of separate causes, as was done in this instance, is an anomaly in the history of judicial proceedings; and we hope no similar entry will again be found in the records of our courts. The law provides that such appeals shall be tried before a jury, and the entering of judgment unless on their verdict is not justifiable.

As the appellee may have it in his power to establish the proofs required by the land law of 1837, we will not, in reversing the decision of the court below, proceed to enter the judgment here which should have been rendered by that court.

And as perhaps in the prosecution of these claims the parties may again appear before this tribunal, it must be understood that the whole of the facts, all of the evidence, whether documentary or oral, should be laid before this court. It is our duty to review causes already decided and on the facts on which the decisions were founded; not on partial or garbled statements, or on issues which might perhaps be made up to obtain the opinion of the court.

It is ordered, adjudged and decreed that the judgments of the court below, in all the cases enumerated in the record in this appeal, be reversed and set aside, and that a new trial be granted to the said appellee in all the said cases.

*Reversed and remanded.*

---

rules and mode of appeal when the statute is deficient. Wheeler v. State, 8 T., 228; Teas v. Robinson, 11 T., 774; St. Clair v. Hotchkiss, 28 T., 474; Simmons v. Fisher, 46 T., 126, 131; Vance v. State, 34 T. Cr., 395, 399. Judgment will not be reversed on ground that the verdict is not supported by the evidence where motion for new trial has not been made. Foster v. Smith, 1 T., 70; Reynolds v .Williams, 1 T., 311; Tarpley v. Poage, 2 T., 139, 152; Smith v. Sherwood, 2 T., 460, 464; Hart v. Ware, 8 T., 115; King v. Gray, 17 T., 62; Wilson v. Gordon, 20 T., 568; Pyron v. Grinder, 25 T. Supp., 159; Cain v. Mack, 33 T., 135; Jacobs v. Hawkins, 63 T., 1; Clark v. Pearce, 80 T., 146; Degender v. McLeary, 85 T., 171; Calbraith v. Townsend, 1 T. C. A., 447; Putnam v. Capps, 6 T. C. A., 610; I. & G. N. Ry. Co. v. Douglas, 7 T. C. A., 554; Sears v. Green, 1 U. C., 733. Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal.,

## No. IV.

### WEEDE v. BOARD OF LAND COMMISSIONERS OF NACOGDOCHES COUNTY.

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—In this case the motion for rearguing the motion made at the last term is dismissed. And the appeal having come up without any statement of facts, or bills of exceptions, or any errors alleged, and therefore, according to the decisions of this court in other causes, no presumptions arising against the correctness of the verdict and judgment below, it is ordered, adjudged and decreed that the appeal be dismissed, and the appellee recover his costs in this court, on this behalf, expended.       ·

*Dismissed.*

## No. V.

### HENRY RAQUET v. GEORGE A. NIXON.

#### (See Note 11.)

*Appeal from Nacogdoches County.*

HEMPHILL, CHIEF JUSTICE.—This was an action of attachment instituted by the appellant against the appellee, in the month of July, 1838. The writ of attachment issued, and was executed on the property of the defendant. The record furnishes no evidence that a citation to the defendant was issued or served in any of the various modes pointed out by law. The cause was not called before the fall term of the court in 1839, when a motion was made to dismiss the attachment on three grounds, which may, however, be resolved into one, viz., "that the petition and affidavit were not sufficient in law to obtain the writ." The motion being overruled, the cause was set for trial next day. No answer, or pleading to the merits, appears from the record to have been filed by the defendant. On the next day the defendant moved to dismiss the cause for want of service of a citation, and the said motion having been duly considered was granted by the court. The plaintiff appealed and filed his bill of exceptions.

The questions which naturally arise here are whether citation to the person was required by law; and if so, whether the necessity thereof was not waived by the acts of the defendant as they are stated in the record. At the institution of this suit the laws of Louisiana in relation to attachments were in force in this Republic, and by them it was regulated

---

370; Wescott v. Menard, Dal., 503; Darly v. Chevallier, Dal., 555; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Connor v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9;

and must be decided. From an examination of those laws, it appears that in suits in attachment a citation to the person is necessary, and indeed seems to be the basis on which the other proceedings in the case are supported. By article 251 of the Code of Practice a citation is directed to issue to the defendant to answer the petition as in ordinary cases. By article 253, the sheriff must serve such citation, first, on the person of the defendant, or at his domicile if he has one in the place, or if he be about to leave the State; second, at the place where the defendant has resided last, if he had a domicile in the place, and conceal himself to avoid being cited. By article 254, if the defendant has no known place of residence, conceal his person, be absent, or reside out of the State, the sheriff is directed to serve the attachment and citation by affixing copies thereof on the door of the parish church or of the courtroom, etc. It seems, then, that a citation is required, and a mode is pointed out for the service thereof in every possible contingency in which the writ of attachment could be obtained. The action in fact is one of mixed character—in personam as well as in rem. By the course of the decisions in Louisiana, where the citation is served in any of the modes pointed out by the code—other than that of publication— the suit is regarded as in personam, the attachment being a mere incidental proceeding to secure the rights of the plaintiff. Where the party is cited by publication the suit is considered as in rem, rather than in personam. But whatever distinctions of this character may be drawn, they do not affect the process of citation, for in all cases of attachment the injunction of the law is positive that citation shall issue and be served. The decisions of the courts have been uniform, that the want of a citation, in the mode prescribed by law, is a fatal objection to the proceedings in attachment—that without it, they are illegal, and the judgment itself in favor of the plaintiff an absolute nullity. 11 M. R., 276; 2 N. S., 52. But the requisite of citation is the privilege of the defendant, which he may waive in express terms, or his acts may imply a waiver thereof. In McMikin v. Smith, 5 N. S., p. 429, it is laid down that the court will presume nothing in relation to a party's being cited. Constructive and even actual notice of a suit will not do, unless given in the manner prescribed by law; but the defect of the want of a citation will be cured by appearance and pleading to the merits. Was the motion, then, of the defendant to dissolve the attachment on account of the insufficiency of the affidavit and petition, such a plea to the merits as cured the want of citation? It does not so appear to this court. A motion to dissolve an attachment is in the nature of a plea in abatement. From its nature it requires to be pleaded in

Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Taylor, 31 T., 124; Andrews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v. Ray, 50 T., 511; Urquhart v. Womack, 53 T., 616; Brooks v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Can-

limine litis, or before issue is joined on the merits, and therefore repels the idea that in itself it constitutes a pleading to the merits of the case. There is nothing, then, in a motion of that character which would preclude the defendant from having the attachment dismissed for the want of a citation. He has waived no right. His attempt in fact was to show that the plaintiff violated the rights, guaranteed to him by the laws, by illegal proceedings in obtaining the attachment. Nor is there other matter in the record sufficient to justify the presumption that a plea to the merits was filed. It states, indeed, that after the motion to dissolve the attachment was overruled, the case was set for trial the next day. Had the trial proceeded, and judgment been rendered, this court might have presumed that such pleadings were entered as would justify the rendition of the judgment; but in the absence of the actual entry of an issue on the merits, and where the judge below entertained a motion which would have been precluded by such an issue, we are bound to believe that there was nothing in the pleadings which would prohibit the court below from entertaining the motion. We are therefore of opinion that the court did not err in dismissing the cause for the want of a service of citation.

Under laws where the suit in attachment is of the mixed character before described, the service of a citation in some of the modes pointed out by the law is a right indispensable to the security of the defendant. Proceedings in attachment, even when the rights of the debtor as secured by the law are held sacred, are oppressive. The property of the defendant is seized before the rights of the parties are adjudicated, and these are decided generally in the absence of the defendant. While the law derogates from the rights of one party, it confers privileges on the other. The creditor can not complain that a law of that character should be strictly construed, and that if he attempt to avail himself of its benefits, he should be compelled to comply with all those formalities which it has deemed essential to the security of the debtor.

It is ordered, adjudged and decreed that the appeal be dismissed, and that the appellee recover his costs of the appellant in this court on this behalf expended.

*Dismissed.*

---

non, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244; Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734. When the record is silent, it will be presumed that sufficient evidence was before the jury to warrant their verdict. Campbell v. Skidmore, 1 T., 475; Portis v. Hill, 30 T., 529; Bailey v. Hearne, 1 App. C., sec. 969; Bradford v. Mann, 1 U. C., 228; Alexander v. Mulhall, 1 U. C., 769; Darragh v. Kaufman, 2 U. C., 97. The jury are presumed to find with reference to the facts in the pleadings and the charge of the court. Darden v. Mathews, 22 T., 320; Patterson v. Allen, 50 T., 23; Traylor v. Townsend, 61 T., 144; Dodd v. Gaines, 82 T., 429; Evans v. Revees, 6 T. C. A., 254; Ackerman v. Ackerman, 22 T. C. A., 612; Clendenning v. Mathews, 1 App. C., sec. 905; Marshall v. State, 4 T. App., 549; Hutto v. State, 7 T. App., 44; Vincent v. State, 10 T. App., 330. The same sanctity is not given to verdicts when the evidence is by deposition, as when it is oral. Strozier v. Lewey, 3 App. C., sec. 129. Presumptions are indulged to

## No. VI.

### JOHN CARTWRIGHT v. JOHN S. ROBERTS.

*On appeal.*

HEMPHILL, CHIEF JUSTICE.—This action was instituted to recover the amount of a promissory note of hand for $600. It was pleaded in bar of said recovery that the note was drawn in a foreign country and could not therefore be sued on in the tribunals of this Republic. The plea was overruled and judgment given for the plaintiff. Immediately succeeding the rendition of the judgment, the record proceeds as follows, viz: "It is further ordered and adjudged by the court, under the statute in such cases made and provided, that the points of law in this case be certified to the Supreme Court, the counsel for both parties moving and assenting thereto." In the above order, reference is made to some statute of the Republic, but we know of none which authorizes points to be reserved for the decision of the Supreme Court, except the forty-third section of the act organizing the district courts; in which a judge of any district court is permitted at his discretion, in any *criminal* case, to reserve a question of law for the consideration and discretion of the Supreme Court at the next succeeding term thereof. This act is confined in its terms to points of law in criminal cases, and can not be extended to civil actions. The mode in which appeals may be taken are prescribed in the statutes of the Republic, and must be conformed to by parties desirous of appealing. Unless the case is properly before this tribunal, we can not take cognizance thereof; and there being no provision of the laws which would authorize this case to be brought up in the manner in which it has been certified to the court, it is not incumbent upon us to take it into consideration. We are therefore of opinion that the same ought to be dismissed; and it is hereby ordered and adjudged accordingly.

*Dismissed.*

## No. VII.

### CHARLES REECE v. JAMES SMITH.

*Appeal from Travis County.*

HUTCHINSON, JUSTICE.—The appellant, as administrator of Milton Hicks, sued the appellee to recover the amount of the bond of the latter to the intestate of August 7, 1839, for the payment on the first of December then next of "one thousand dollars—Texas money." Ver-

support a judgment when the trial is upon an agreed statement of facts. Henderson v. Samuels, 7 T. C. A., 351.

Note 10.—Board of Land Commissioners v. Reily, Assignee, p. 381.

Laws to detect fraudulent land certificates are constitutional. Johns v. Republic, Dal., 621; Hosner v. De Young, 1 T., 764; Peck v. Moody, 23 T., 93;

dict was given specially for the plaintiff, for $1000 in Texas money, with interest from December 1, 1839; that the jury believed it was the intention of the parties that Texas promissory notes should be received in payment, and at that time they were 33 1-3 cents in the dollar. The plaintiff moved for judgment for $1000, lawful money with interest; but the court rendered judgment on the verdict for $333 1-3 with interest and costs.

The cause is submitted. The only question that seems to have been made below is in regard to the force and effect of the bond as to the amount demandable upon its face. By the instrument, the obligor made but one stipulation, and that was to pay $1000 Texas money. The Republic has indeed a constitutional standard of money, but she has not yet established a mint, and has issued a vast amount of her bonds and notes to serve as a currency in the absence of the medium contemplated by the Constitution as lawful money. In common speech those bonds and notes are designated and meant by the terms *Texas money,* or Texas promissory notes, or some equivalent words. It was therefore properly left to the jury to find the value of such currency in par or lawful money. The court below should have instructed the jury as to the legal import of the bond; but as the jury in their verdict give it a proper interpretation, it was correctly left to them to find the value, or ratio of the value of the inferior money stipulated.

Instruments often contain primary and occasional stipulations. Thus if the bond had been to pay so much money without any qualification as to its kind, and then had contained a distinct clause in favor of the contractor, allowing him to pay in a currency other than lawful money, the effect of the instrument might deserve a more serious consideration— but that is not now before us.

The judgment below must be affirmed.

This cause coming on to be heard on the transcript of the record in the District Court of Travis County, and it being inspected, because it seems to the court here that there is no error therein, it is therefore considered by the court here that the judgment of the district court be in all things affirmed, and that the appellee recover of the appellant his costs in this behalf in this court expended. Let this judgment be certified below for execution.

*Affirmed.*

Sherwood v. Fleming, 25 T. Supp., 408; Durrett v. Crosby, 28 T., 687; League v. De Young, 11 How., 185. Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), providing for survey and return of general land certificates, is constitutional. Snider v. I. & G. N. Ry. Co., 52 T., 306. A colonist was not entitled to a grant as head of a family, unless his family was resident in Texas. Land Commrs. v. Bell, Dal., 366; Land Commrs. v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Langford v. Republic, Dal., 588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269; Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T., 335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep., 965. An unmarried colonist, under twenty-one years of age, was not entitled to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed from the fact that a headright certificate was granted by the proper

## VIII.

## B. S. GRAYSON V. J. CUMMINS.

*New trial awarded.*

HUTCHINSON, JUSTICE.—The counsel of the appellant submits this cause on a motion to remand it for new trial and a more definite decision. The transcript sent is certified as containing a full copy of the record in the court below; and there being no affidavit of diminution, we can not award a certiorari for a more perfect transcript. Indeed, on inspection, we are persuaded the transcript before us contains all that can be found pertaining to the cause in the court below.

The transcript itself is so very imperfect and the entries made of what may have been the proceedings and judgment so squalid and deficient in respect of substance, that we are unwilling to permit the record, as it now is below, to remain a perpetual memorial of the adjustment of the rights involved, and feel it due to the safe administration of justice to remand the case for another trial, with instructions to the district court so to direct and control its clerk that the future progress in it may be put on the record in some shape to indicate what shall have been done.

In regard to the transcript before us, it does not show when the petition was filed; whether the copy of Cummins' title papers was exhibited with the petition; when the plea was filed; whether what appears to be the sheriff's return was the return on the citation; and the allowance of the appeal, if entered on the minutes, and appeal bond, if any was given, are not copied into the transcript. A transcript can not be perfect without introducing after the caption, in the order of their occurrence, the petition and documents exhibited, if any; the process and return; the plea, answer, and other pleadings; the intermediate orders of the court in the case; and lastly the postea and judgment, with the grant of appeal and the appeal bond. Each of these should be preceded by an introductory statement connecting it with the cause, or showing the time when made or filed. This duty is devolved on the clerk as the sworn amanuensis of the court, the keeper of its archives, and the officer who can alone make accurately a history of the case. Until after final judgment the record is constituted by the pleadings, process, returns on the process and orders of the court, as connected by the clerk's numbers, docket and memoranda. After judgment, he is to transfer the whole into a complete record book; and that he can only properly do by the introduction of each part in chronological order with the conjunctive matter of his own, derived from his memoranda on the papers and dockets. The names of the parties, being

---

authority, that the grantee was the head of a family, and evidence is not admissible in a collateral proceeding to show that he was not married and that his family was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T., 155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495; Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T., 335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee

introduced by the pleadings, need not be repeated by way of caption. In England the record was begun on a parchment roll and enlarged on that roll as the proceedings occurred. When the case was ended, the last step was put on the roll and it was filed, to remain as the veritable record. In this Republic the complete record is to supply the absence of the parchment roll; so that here the complete record, and a transcript whenever required, should be ever the same, the latter being an exact exemplification of the former, as a copy of the roll in England is a transcript of the record. We do not design by these remarks to intimate that the imperfections of the transcript above noticed are such as to require a reversal of the judgment; but we notice them with regret and in the hope they will be hereafter avoided in every part of the Republic. The transcript from other counties are in most instances liable to similar and some to a severer criticism.

The vice in the case in review does not so much appear in the manner of the copy transmitted here, but is found in the postea and judgment. Those are presented in these remarkable words: "Again come to be heard,—parties appeared again and answered ready for trial; Motion by Defendant's Attorney, to exclude testimony upon reasons, but first, &c., whereupon the case was submitted to the Jury, S. & E., for the purpose retired and returned the following verdict, we the Jury find for the Defendant, L. M. B. Ryne, foreman; whereupon the Court ordered adjudged and decreed, plaintiff, pay costs." Was a jury elected, tried and sworn to try the issue joined? Was it a jury of twelve, or of any less number? Who were they? To whom was the league of land in controversy adjudged? Was there even a judgment against the plaintiff for costs? To these questions the postea and judgment give no certain answer. In a country whose Constitution has adopted the institution of jury trial and required it to be preserved inviolate, whatever theories may be indulged for or against its utility, the appellate court is bound to see the object of the constituent law as well as the whole concurrent legislation on the subject duly observed. If we examine the revised records of England and of the North American United States, it is apprehended that such a passing notice of the jury trying a case, however trivial, was never considered sufficient. It should have appeared that a jury, naming twelve persons, were elected, tried and sworn well and truly to try the issue, who, on their oath, found the verdict. At the farthest relaxation it ought to appear that a jury of lawful men were sworn to try the cause, and on their oath gave the verdict. In several respects it may be import-

---

in good faith, intended to move his family to Texas. Republic v. Young, Dal., 464; State v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), it was necessary to prove in court, the same facts which the statute required for the satisfaction of the Board of Land Commissioners. Republic v. Skidmore, Dal., 581; Johns v. Republic, Dal., 621; Land Commissioners v. Raguet, 2 T., 98. Claimants were required, prior to Act of February 2, 1848 (Gammel's Laws of Texas, vol. 3, p. 18), to prove same facts under section 11 of Act of February 4, 1841 (Gammel's Laws of Texas, vol. 2, p. 635). Tichner v. State, 2 T., 269; State v. Mason, 2 T., 315; Linn v. State, 2 T., 317. Titles issued by alcaldes and commissioners after closing of Land Office by Act of

ant to the parties or some of them to have the names of the jurors on the record, and it is conformable to the precedents and to the safest practice to insert them. It has been often ruled that a less number than twelve is no jury, so that any local or occasional usage of consenting to a less number is reprehensible as a course calculated to bring into disuse and disrepute a mode of trial of controverted facts, identified with the greater cause of civil liberty.

It is obvious in this case that the district court tried it and gave judgment; and it is equally clear the clerk failed to make even a tolerable entry of the judgment. When we are satisfied that a lawful jury came, were sworn and on their oath rendered verdict, we are to entertain all reasonable presumptions in support of it; that is to say, that they acted on sufficient evidence and proceeded with discernment and honesty; and these presumptions will sustain it in the absence of something to countervail them. So too in regard to a judgment of a court of general jurisdiction; it will be sustained unless there be something apparent to show its illegality or injustice; but then, as a revising tribunal, we must know, and know too from the judgment itself, what is adjudged and in whose favor, as also against whom. This is not done in the instance on hand. It is nevertheless obvious that in point of fact the court acted definitively; for in the certificate of the judge of the question of evidence made before him, he states that the defendant appealed. The case is therefore in this condition: there is no judgment below whereon final process for either party can properly issue, and if on the question raised in the judge's certificate we were to concur with him, there would be no legitimate judgment to be affirmed. We might, if the judge had erred in his opinion, reverse the judgment, or more properly the supposed verdict, and award a venire facias de novo. Under these circumstances, we think it best not to decide the question raised, but remand the case for a new trial, without further directions than to have the next postea and judgment entered conformably to the requisitions of law. We are disinclined to strike the case from the docket or to dismiss the appeal, because that might leave the appellant precluded, or at least prejudiced, by the unskillful entries of the clerk and the casualty of their escaping the observation of the court below. In the meantime the possession of the appellee and his right, whatever it may be, will remain uninterrupted.

This cause being submitted on the motion of the appellant to remand the same for new trial, and the transcript of the record below being

Consultation on November 13, 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Bains, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Walling, Dal., 524; Republic v. Skidmore, Dal., 581; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T.,

inspected, because it seems to the court that the entries of the jury, verdict and judgment in this behalf in the court below are too vague and uncertain either to satisfy the court here whether a regular trial was had, or what judgment was rendered, it is therefore considered by the court here that the postea and judgment below be set aside, and that this cause be remanded to the court below, that a new trial be had therein, and that the appellant pay to the appellee the costs of this case in this court expended, for which execution below may issue.

*Remanded.*

## No. IX.

### ISAAC GUEST v. JOHN GUEST.

#### (See Note 12.)

*New trial awarded.*

SCURRY, JUSTICE.—In this case it appears from the record that judgment of nonsuit was entered by the court below upon motion of the defendant. The word nonsuit is technical in its meaning, and alone specifies that it is by the action of a party bringing a suit that such judgment can be rendered. Nonsuit can be taken by the plaintiff below; but neither the district court nor any other court has the power to *compel* the party to take a nonsuit.

A party may take a judgment by nonsuit if he chooses, but the court can not force him to do so. 1 Pet., 471.

The district court has no power whatsoever to order a peremptory nonsuit. 6 Pet., 598.

Nonsuit may be entered by the court, but not without the acquiescence and consent of the plaintiff. 1 Pet., 491.

It is therefore the opinion of the court, that this cause be remanded to the court below, and that the judgment of nonsuit be set aside and a new trial awarded.

## No. X.

### BOARD OF LAND COMMISSIONERS OF RED RIVER COUNTY v. ELIZABETH HERRING, ALIAS ELIZABETH WATSON, BY HER HUSBAND, JNO. S. HERRING.

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—Elizabeth Herring, alias Elizabeth Watson, by and through her husband John S. Herring, on the 1st day of March, 1838, applied to the board of land commissioners for the county

---

98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75 T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837,

of Red River for a certificate for a league and labor of land, to which she alleged she was entitled as a citizen of the Republic of Texas and the head of a family at the date of the declaration of independence. The board refused her application, and on appeal therefrom to the district court, the judgment of the board of land commissioners was reversed and a certificate or order of survey for a league and labor of land was ordered to issue to the said Elizabeth. From this judgment the board of land commissioners appealed; and the following is the statement of facts accompanying the transcript of the record sent up to this court: "That Elizbeth Watson emigrated to this government in the year 1833, and that William Watson died previous to the declaration of independence, the precise time not proved. Elizabeth Watson was a feme sole, and resided here at the date of the declaration of independence, the head of a family, and that she had never received any land, as a colonist, or emigrant, from the Government of Texas. That she had continued to reside here and is now a resident; and it was further proved that she resided as a member of William Watson's family in the year 1835; and that she intermarried with John S. Herring after the date of the declaration of independence." From the view which the court has taken of this case it will be unnecessary to notice any of the grounds assumed, whether against or in support of the judgment of the district court. The facts as set forth in the above statement are involved in much obscurity. One William Watson is mentioned, but what connection there is, if any, between him and the appellee is not stated and is left entirely to vague conjecture. The appellee is described as a feme sole, and the "head of a family." From this description the court can not ascertain with precision whether she was a widow, or a single woman who had never been married, though the term is generally appropriated to single women who have not been married; nor can we conjecture how her family was constituted. The word "family" has not been judicially defined, and in common acceptation has received very variant constructions. The court can not decide whether the appellee had a family, until it is informed in what manner it was constituted, whether by servants, by children, and if children, whether they were legitimate or illegitimate, or in what mode; for by these and various other modes of uniting several persons under one controlling head, it has been supposed a family may be formed. From the above and other instances of uncertainty in the facts as furnished to us in the above case, it is feared that any decision made by this court might operate injustice

---

were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528). Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificate of recommendation from Board of Land Commissioners, and holders of unrecommended land certificates had no standing in court without it. Norton v. Land Commissioners, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Crawford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February

to one or other of the parties. It is therefore ordered and decreed that the cause be remanded to the court below for a new trial, in order that the facts in relation to the said case may be fully and clearly established and set forth.

*Remanded.*

## No. XI.

### JOHN MORTON v. GORDON AND ALLEY, ADMINISTRATORS.

#### (See Note 13.)

*On appeal.*

BAYLOR, JUSTICE.—In this case Gordon and Alley, as administrators of Albert D. Duncan, deceased, instituted their suit in the court below to recover of Morton, the appellant, the sum of $124.18, alleged to have been due and owing to Duncan in his lifetime by Morton. To the plaintiffs' petition setting forth their demand, Morton filed his plea of set-off, averring that Duncan before his death was justly indebted to him in the sum of $101. To this plea the plaintiffs demurred. The court sustained the demurrer and, as both parties admitted the justice of each other's claim, gave judgment for the plaintiffs.

A bill of exceptions taken in the case also presents the same point for the consideration of this court which arose on the demurrer; and that is, "Does the act passed February 5, A. D. 1840, regulating the mode of settling the estates of intestate persons, preclude the defendant from the benefit of his plea of set-off, allowed as he contends by the act passed also on February 5, A. D. 1840?"

Before we are permitted to decide this point, although the parties have consented to the jurisdiction of this court, we feel bound to notice the question of jurisdiction as one of great moment to the jurisprudence of this country. Consent may do away error, but it is well settled that it can not give jurisdiction. By the act organizing the district courts, the right to appeal is expressly prohibited, unless the sum in controversy amounts to $300. Here the record shows that the amount in controversy was for a less sum. Hence if we entertain jurisdiction, our power to do so must be derived from some other source than the act alluded to, or the consent given.

It is urged that so much of the act of Congress as restricts the right of the citizen to appeal from the District to the Supreme Court is unconstitutional, and that this tribunal has the power to hear and

5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time allowed by Con-

determine all causes which may originate and have been decided in the district courts.

If this position be correct, then we can legitimately consider and determine the point arising on the demurrer.

We think the power here contended for justly belongs to this tribunal, and in coming to this conclusion we have not been unmindful of the magnitude of the principles involved, and the respect due to the popular branch of the government.

We have felt the delicacy and embarrassment of this question, and, if we were permitted, from these and many other considerations (as the amount in controversy is small) we would be induced to pass it over. "Fortunately, however, for the people, the function of the judiciary in deciding constitutional questions is not one which it is at liberty to decline. While it is bound not to take jurisdiction if it should not, it is equally true that it must take jurisdiction if it should; it can not, as the Legislature may, avoid a measure because it approaches the confines of the Constitution; it can not pass it by because it is doubtful; with whatever doubt, with whatever difficulties a case may be attended, it must decide it when it arises in judgment. It has no more right to decline the exercise of a jurisdiction which is given than to usurp that which it not given; the one or the other would be treason to the Constitution."

With these few preliminary remarks, we proceed to give some of the reasons which have induced us to decide in favor of the power claimed for this court. We have searched in vain for the express power delegated to Congress in the Constitution to enact the restriction. If it has the power then it must be by implication alone; and by implication perhaps, Congress have the power to restrict the right of appeal from the inferior to the district courts.

If we compare the Constitution of this country with that of the United States and most of the States, we shall find this remarkable difference: the Constitution of the United States, for example, after speaking of the appellate jurisdiction of the Supreme Court, expressly states that it is to be exercised *with such exceptions and under such regulations as the Congress shall make.* Here the power to restrict is clearly given, and under this grant of power Congress has said no appeal from the circuit court shall be allowed unless the amount in controversy exceeds $2000. If our Constitution had contained similar expressions, the right to restrict would have been placed beyond doubt. But were these expressions casually dropped from the circumstance that the Constitution was formed in the midst of a revolution, or were they

stitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett

left out of the Constitution in order to take from Congress this restrictive power, and leave the appellate jurisdiction of the Supreme Court unfettered, "coextensive within the limits of the Republic?" To arrive at the true meaning, from the circumstances here stated, has produced our chief embarrassment. It may be said, although the Constitution is silent as to this restrictive power found in similar instruments, that silence is not extinction, and that Congress may, by a fair and liberal construction of its authority, exercise this power when the public welfare demands it. This may be true as to tribunals inferior to the district courts; but it would be carrying the doctrine of implication too far, as we conceive, to make it applicable to the question now under consideration. It may also be contended, as Congress have the power to make all laws which shall be necessary and proper for carrying all other powers into execution, this gave the right to enact the restrictive clause complained of. But in the case of Gibons v. Ogden, 9 Wheat., 1, etc., Chief Justice Marshall, in delivering the opinion of the court, says this limitation on the means which may be used is not extended to the powers which are conferred.

The difficulty still remains, and we confess we have been unable to solve it by any construction of the Constitution which would confer this power on Congress. The Supreme Court of the United States have expressly decided that they derive their appellate jurisdiction from the Constitution and not from acts of Congress. That it is true, Congress may restrict their appellate jurisdiction, for this power is given; but in all cases where they have not thought proper to do so, the jurisdiction remains with the court. In other words that they derive their jurisdiction from the Constitution itself. This doctrine we think correct, and that the jurisdiction of our Supreme Court, which is admitted by all to be appellate only, is derived from the Constitution in proprio vigore, and is "coextensive within the limits of the Republic." Whether this appellate jurisdiction thus derived was intended to be exerted over all the inferior courts of the country, we leave open for the future decisions of this tribunal. It is sufficient to say for the present, that Congress has no power to restrict the citizen in his right to appeal from the decisions of the district court to the Supreme Court, in cases cognizable in the former tribunal. If we test the soundness of this opinion by the rules which have been adopted for the interpretation of the Constitution of the United States, we think we shall be borne out in our conclusions on this subject.

One of those rules is, where the grant inures solely and exclusively

v. Land Commissioner, 28 T., 687; Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Revised Statutes 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v.

for the benefit of the grantor himself, no one would deny the propriety of giving to the words of the grant a benign and liberal interpretation. Keeping this rule in view, let us refer to the eleventh clause of our Declaration of Rights. We there find that a remedy is guaranteed to the citizen for the redress of every civil injury; and we are here to pause, in order to ascertain what is properly embraced in the term *remedy*. Is it to be full, when a court of original jurisdiction only is provided to enforce it? Did the Constitution intend that in regard to one class of rights there should be supervision, and in another that there should be none? Such a discrimination and unjust spirit can not be deduced from that sacred instrument. It is the nation's panoply! No one ought to be left precluded; nay, irrevocably doomed to abide the ministry of justice, by one functionary in the first instance. Why, in any class of cases, was appellate relief imparted? Surely on the reasonable presumption that the court acting primarily in the cause might err, or might oppress; and it was to remit the citizen to another and higher tribunal to have the error or the oppression, whether real or supposed, corrected or rebuked. Still another motive operated. The government being established to insure the protection, prosperity and happiness of the people, the administration of justice in the original and supervisory forums would conduce to public satisfaction.

Another rule of construction is: Where the power is granted in general terms, as the jurisdiction of this court has been, the power is to be construed as coextensive with the terms, unless some clear restriction upon it is deducible from the context. We do not mean to assert, as we have already intimated, that it is necessary that such restriction should be expressly found in the context. It would be sufficient if it arise by necessary implication. But it is not sufficient to show that there was, or might have been, a sound or probable motive to restrict it. A restriction founded on conjecture is wholly inadmissible. The reason is obvious. The text was adopted by the people in its obvious and general sense. For this doctrine, see Story's Commentaries on the Constitution, vol. 1, p. 407. By applying this liberal rule of construction to the terms in which the jurisdiction of this court is conferred, we can not doubt for a moment but that it was the intention of the framers of the Constitution to give it a supervisory care and control over all cases originating and decided in the district courts; and we are strengthened in this opinion from the consideration that the district court is the connecting link between the people and this tribunal of the last resort. It may be regarded also as the only channel through which

---

Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Walling, Dal., 524; Johns v. Republic, Dal., 621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioner v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons,

all admiralty and maritime cases, all cases affecting ambassadors, public ministers or consuls, can be brought into this tribunal. In the cases above enumerated the district courts have exclusive original jurisdiction. Surely, then, when the decisions in such cases are to be governed by the laws of nature and of nations, and when the peace and happiness of the Republic may often depend upon their correct adjustment, no one will contend, in this class of cases, that Congress have the power to restrict the right of the parties to appeal. If not, where shall we draw the line of demarcation? To attempt it, would be invidious and contrary to the soundest principles of construction. To illustrate still farther: It will be found by reference to the seventh and eighth sections of the Constitution, where after pointing out the manner in which the Supreme Court shall be constituted, the proviso in the eighth section says "that no judge shall sit in a case, in the Supreme Court, tried by him in the court below." This proviso evidently shows that it was the intention of the makers of the Constitution to allow appeals to be taken directly from the district to the Supreme Court. The appellate right here recognized, although not conclusive, is certainly given without restriction. With the application of one other principle, we shall close our inquiries on this branch of the subject. It is admitted to be a sound rule that all remedial laws should be construed liberally. This rule is equally applicable to the remedial parts of the paramount law. If so, we think we have not erred in giving such a construction to the constitutional powers of this court as will enable every man, suing or sued in the district court, to have a remedy here to redress his real or imaginary wrongs. We do not perceive any ill consequences growing out of this decision. The only effect it can have will be to enlarge the right of appeal to all the citizens equally alike, and give uniformity to the decisions of the courts throughout the country. We have had but little time to examine the important principle here settled; if errors should hereafter be found to exis in the opinion we trust it will not be attributed to a love of power, but to an overjealousy in guarding the rights of the people, and a desire to hear them unrestricted in this, the last citadel of justice known to the laws and Constitution of the nation.

The remaining point may be disposed of in a few words. We think the plea of set-off should have been allowed, as there is no conflict in the two acts referred to. The plaintiffs were not entitled to recover more than the balance due them, after allowing the set-off. If Morton had commenced his action against them for the set-off pleaded, then he could not have recovered, unless he had first proceeded in the way

14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Under section 23 of Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p. 627; Rev. Stats. 1895, art. 5259), location claims and surveys, headright certificates, pre-emption claims, etc., are sufficient title to maintain action of trespass to try title, or defense to. Lambert v. Weir, 27 T., 359; Buford v. Gray, 51 T., 331; Buford v. Bostick, 58 T., 63; Horne v. Gambrell, 1 App. C., sec. 999. Prior to Rev. Stats., 1879, action could be maintained on right acquired by mere location.

pointed out by the act regulating the settlement of the estates of intestate persons. But why compel him to do this, as in justice his demand was extinguished by that of the plaintiff?

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed; and proceeding to give such a judgment as in our opinion ought to have been given in the district court, we order, adjudge and decree that the appellees, Gordon and Alley, as administrators, etc., do recover from the appellant, Morton, the sum of $23.18, with legal interest from the rendition of this judgment until paid; and that the appellees pay the costs of this court, and the appellant the costs in the court below.

*Reversed and rendered.*

Judges Hemphill and Scurry say: "We concur in this opinion so far as relates to the jurisdiction, but not on the question of the set-off."

## NO. XII.

### JOHN H. FOWLER v. IRA S. POOR.

#### (See Note 14.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The plaintiff having filed the affidavit and executed the bond required by law, the clerk of the District Court for the County of Red River issued a writ of attachment against the property of the defendant on the 17th of April, 1840, but did not file his petition until the 27th of July afterwards. Among other matters, the defendant in his answer pleads that the plaintiff ought not to maintain his action, because the petition was not filed until after the issuing of the attachment. The plea was sustained by the court, and from that decision an appeal has been taken.

The counsel for the appellant insisted strenuously that in taking out a writ of attachment nothing more was necessary than the bond and affidavit required by the act regulating attachments, approved January 28, 1839. Were our attention confined to that statute alone, that conclusion might readily be adopted. But suit by attachment is a civil action; and on examining and comparing the various statutes of this Republic in relation to proceedings in civil suits, it will be found that in taking out any writ or process the plaintiff is required to file his petition.

The first statute in the order of time is the "Act establishing the jurisdiction and powers of the district courts," approved December 22, 1836, volume 1, page 198, of Laws of Texas. A portion of section 8 of this

---

Since then, it requires location and survey. Thomson v. Locke, 66 T., 383; Duren v. H. & T. C. Ry. Co., 86 T., 287. Survey must be legal, 80 T., 249. Von Rosenberg v. Cuellar, 80 T., 249. Order of survey under colonization laws, prior to closing Land Office in 1835, is not sufficient title, unless presented to Board of Land Commissioners and established in the manner required by

---

Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404). Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Hughes v. Lane, 6 T., 289. Nor is a certificate not recommended by Board of Land Commissioners under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313). Kemper v. Victoria, 3 T., 135. Land certificates required by Act of August 1, 1856 (Gammel's Laws of Texas, vol. 4, p. 432), to be presented to Commissioner of Claims for registry within two years from September 1, 1856, are not evidence of title, without proof of registration. Peck v. Moody, 23 T., 93. Rules stated above are not applicable where patents have issued. Merrill v. Roberts, 64 T., 441.